### BRODRICK v. BROWN.

#### (Circuit Court, S. D. California. July 22, 1895.)

#### No. 644.

BANKS AND BANKING—VOLUNTARY ASSESSMENT.

The F. National Bank suspended business for lack of funds, and was placed in charge of a bank examiner, who required that $50,000 should be raised and placed in the bank before it could resume business. The stockholders, including one B., the president, thereupon raised this sum in amounts equal to 50 per cent. of their stock, and placed it in the bank. The examiner caused entries to be made on the books indicating that this contribution was a voluntary assessment subject, after one year, to the liabilities of the bank, and permitted the bank to resume. B., at a meeting of the directors subsequently held, protested against these book entries, but afterwards signed reports in which the $50,000 was included as surplus. At the time of the advance the bank held two notes of B., and discounted another note of his a few days before the expiration of a year from the advance. Shortly after the expiration of the year, the bank again suspended payment. *Held,* that the advance to the bank was a voluntary assessment, and not a loan, and could not be set off by B. in an action against him on the notes by the receiver of the bank.

This was an action by William J. Brodrick, as receiver of the First National Bank of San Bernardino, against Joseph Brown. The case was heard by the court without a jury.

Curtis, Oster & Curtis, for plaintiff.
Rolfe & Rolfe, for defendant.

WELLBORN, District Judge. Plaintiff, as receiver of the First National Bank of San Bernardino, brings this action to recover of the defendant on three promissory notes, each payable, on demand, to First National Bank of San Bernardino, bearing interest at the rate of 10 per cent. per annum,—one for $3,000, another for $5,000, and another for $7,000, bearing dates, respectively, March 17, 1892, May 18, 1893, and July 9, 1894. There is no denial of the making and delivery of the notes. The answer sets up, however, by way of counterclaim, that on or about the 10th day of July, 1893, defendant loaned to said bank the sum of $20,500, and that no part of same has been paid. The only issue between the parties arises on this answer, plaintiff insisting that the money therein mentioned was advanced by the defendant to said bank, not as a loan, but as

a contribution, voluntarily made, for the betterment of the stock, to enable said bank to resume business.

On the trial of the case the following facts were made to appear by stipulation of the parties: That said bank was created and organized under an act of congress known as the "National Bank Act," with a capital stock of $100,000, divided into 1,000 shares, of the par value of $100 each, and that defendant at all times owned 410 of these shares. That on June 23, 1893, for lack of funds to pay depositors in the due course of business, said bank closed its doors, and immediately thereafter notified the comptroller of the currency of the United States of its condition; and that thereafter, on or about the ———— day of June, 1893, said bank was by the said comptroller of the currency of the United States placed in charge of Bank Examiner J. B. Lazier, who remained in charge and control of said bank until it resumed business on the 21st day of July, 1893. That during the time said Lazier was in charge of said bank he informed the directors thereof that, before the said bank would be permitted by the said comptroller of the currency of the United States to resume business, the sum of $50,000 would have to be raised and placed in said bank; and that, acting on said information, and in order to enable said bank to resume business, said stockholders thereof severally raised, and between the 15th and 21st days of July, 1893, placed in the hands of said Lazier, for the use of said bank, sums of money, equal to 50 per cent. of the par value of the capital stock owned by them respectively; and thereupon said Lazier caused to be entered on page 237 of the general cash book of said bank the following entry:

"The fifty thousand dollars voluntary assessment which has been paid in by the stockholders remains undisturbed in the bank for one year, after which time any losses in present valuations of assets will be charged against same, and balance subject to stockholders; the said fifty thousand dollars having been paid as follows: 50 per cent. on capital stock by—

| | |
|---|---:|
| Brown, Joseph | $20,500 |
| " Mrs. " | 250 |
| Barton, Mary | 1,500 |
| Brinkmeyer, H. | 2,000 |
| Crandall, W. N. | 1,000 |
| " L. D. | 1,000 |
| Curtis, W. J. | 1,500 |
| " Frances | 500 |
| " Lucy M. | 500 |
| Flanders, J. | 2,000 |
| Garner, M. B. | 5,000 |
| Hall, J. W. | 4,000 |
| James, John M. | 1,500 |
| " Mrs. D. C. | 500 |
| Johnson, F. M. | 500 |
| Kohl, O. H. | 5,000 |
| " F. | 500 |
| Kohl, L. | 500 |
| Rolfe & Freeman | 250 |
| Vail, A. H. | 500 |
| Warner, S. M. | 500 |
| " F. E. | 500 |
| | |
| Amt. carried to surplus #2 | $50,000" |

— That on the teller book of said bank No. 13, under date of July 15, 1893, is the following entry: "Stockholders' voluntary assessment, $50,000;" and that on the general ledger of said bank, on page 5, is the following entry: "Shareholders' voluntary assessment, to surplus #2, $50,000." That on October 10, 1893, December 28, 1893, March 9, 1894, May 14, 1894, July 28, 1894, and October 12, 1894, reports of the condition of said bank, verified by the oath of O. H. Kohl, its cashier, and signed by three of its directors, were made to the said comptroller of the currency, in each of which reports the said $50,000 is entered as follows: "Surplus #2, $50,000;" and that each and all of said reports, except the one made on the said 14th day of May, 1894, were signed by Joseph Brown, the defendant herein. That on the 21st day of July, 1893, said bank (having obtained permission from the comptroller of the currency of the United States to resume business, the said Lazier having turned over and delivered to the officers of said bank all of its assets, including said sum of $50,000) opened its doors and resumed business, and from that time until the 8th day of November, 1894, continued to transact the business of banking, as it had done prior to the closing of its doors on the said 23d day of June, 1893. That on the 8th day of November, 1894, on account of the lack of funds to pay its depositors in the due course of business, said bank again closed its doors, and thereafter was placed in charge of William J. Brodrick as receiver. That ever since the 10th day of February, 1890, Joseph Brown, the defendant herein, has been a director and president of said bank.

Defendant testified that, at the first meeting of the directors after the bank's resumption of business, he called attention and objected to the entry which Lazier caused to be made, on page 237 of the general cash book, to the effect that the $50,000 was a voluntary assessment, and chargeable with depreciations in assets. Three other witnesses, besides himself, were introduced on behalf of the defendant, and testified, substantially, that they were stockholders in said bank, and that they understood that the moneys advanced by the stockholders were to be paid back one year after the advances were made; but they did not say from or with whom this understanding was received or had. Witnesses for the plaintiff, two in number, stockholders of the bank, testified, on the contrary, that there was no understanding by them that the moneys advanced by the stockholders were to be repaid, but that such advances were understood to be voluntary assessments. The cashier of the bank, O. H. Kohl, witness for the plaintiff, testified that none of the stockholders had ever demanded repayment of their advances. H. Brinkmeyer, witness for defendant, said that he had on one occasion called for repayment of the amount advanced by him. These, in brief, are the facts of the case, so far as relates to the ground on which my decision rests.

The law is well settled that where stockholders voluntarily assess themselves, to relieve the corporation from pecuniary embarrassment, or for the betterment of their stock, whatever may be the occasion of the assessment, the advances thus made are not

debts against, but assets of, the corporation. Bidwell v. Railroad Co. (Pa. Sup.) 6 Atl. 729; Leavitt v. Mining Co. (Utah) 1 Pac. 360; 2 Thomp. Corp., § 1717. While there is some conflict in the oral testimony as to the nature of the transaction which eventuated in the raising of the $50,000 of which defendant's payment of $20,-500 was a part, careful consideration of all the evidence satisfies me that the advances thus made were not loans, but voluntary contributions by the stockholders, for the betterment of their stock, and to enable the bank to resume business. The chief contention of the defendant is that where money is deposited with a bank generally, without any special agreement in reference thereto, such deposit is a loan, and therefore a debt against the bank in favor of the depositor. This proposition, rightly understood, is unquestionably correct, and abundantly sustained by authority. In the case of Scammon v. Kimball, 92 U. S. 370, cited and quoted from in defendant's brief, the principle is thus stated:

"Sums which are paid, said Lord Denman, to the credit of a customer with a banker, though usually called deposits, are, in truth, loans by the customer to the banker; and the party who seeks to recover the balance of such an account must prove that the loan was in reality intended to be his, and that it was received as such. Sims v. Bond, 5 Barn. & Adol. 392.

"Exactly the same rule was laid down in the court of exchequer, where it was held that money deposited with a banker by his customer, in the ordinary way, is money lent to the banker, with a superadded obligation that it is to be paid when demanded by a check. Pott v. Clegg, 16 Mees. & W. 327."

From this quotation, particularly the latter paragraph, it will be seen that to make the deposit of money in bank a loan, in the absence of an express contract, it is essential that the money be deposited "in the ordinary way." This statement of the law reveals the vulnerable point in defendant's argument, for manifestly the money paid by defendant to J. B. Lazier, the bank examiner, for the use of the bank, was not money deposited "in the ordinary way." The bank, at the time, was not doing business "in the ordinary way"; indeed, there was an entire suspension of its usual business. The bank was closed, and in the charge of the comptroller of the currency of the United States. There was no one who could on its account have received deposits "in the ordinary way." No such power resided even in the comptroller. The most and all that he could do was to prescribe the conditions on which there could be a resumption of business. This course he did adopt, and the prescribed condition was that the stockholders should raise, and turn over for the use of the bank, $50,000. This condition was complied with. The money thus raised and turned over could not have been a loan, for the obvious reason that no one at the time was authorized to borrow money for the bank. The only possible theory consistent with the situation of the bank and the circumstances of the parties is that the transaction was a voluntary assessment. Furthermore, and as showing the defendant's understanding, on five different occasions between and including October 10, 1893, and October 12, 1894, this money was reported to the comptroller of the currency as "Surplus #2, $50,000," and each one of said reports was

signed by the defendant. It is incredible that the defendant would have thus habitually and constantly reported this money as surplus,—that is, an asset of the bank,—had he believed it to be a liability. Again, the facts that at the time defendant's advance was made the bank held his notes, one for $3,000 and the other for $5,000, being two of the three notes sued on, and that no account was taken of those notes; and that, a few days before the expiration of one year from the time of the advance, the defendant executed another note to the bank, for $7,000, also one of the notes sued on,—are circumstances tending to discredit defendant's contention of a loan, and to strengthen the position of the plaintiff that the transaction was a voluntary assessment. Furthermore, all the entries upon the books of the bank, made by the examiner during the time he had charge, point in the same direction; and when it is remembered that the defendant was president of the bank, largely interested, and actively participating in the efforts then being made for its resumption of business, it is a fair inference that he had knowledge of and was familiar with these entries. The fact that after the whole arrangement had been consummated, and the money paid thereunder, the defendant objected to one of these entries at a meeting of the directors, cannot alter or affect the nature of the transaction, which had already been accomplished. Again, the receipts given by the examiner to two or three of the stockholders at the time their advances were made, as well as the entries above mentioned, show conclusively that he considered the arrangement a voluntary assessment. In view of the close relations which the defendant bore to the bank, and his efforts for reopening the same, can it be presumed for a moment that he was ignorant of or at war with the views of the examiner? I think not.

For the reasons above indicated, my finding is that the $20,500 mentioned in defendant's answer was a voluntary contribution for the betterment of his stock, and therefore is not a debt against the bank. This view of the facts renders it unnecessary for me to decide the other question, made in argument, as to the right of setoff. Judgment will be entered for plaintiff in accordance with the demand of his complaint.