(10 App. Div. 610.)

## DYKMAN v. KEENEY et al.

(Supreme Court, Appellate Division, Second Department. December 15, 1896.)

1. CORPORATIONS—IMPAIRMENT OF CAPITAL—LIABILITY OF DIRECTORS.
    In an action under Laws 1892, c. 688 (Stock Corporation Law) § 23, forbidding the payment of dividends except from surplus profits, and making the directors liable to the corporation and its creditors for the full amount paid out of the capital stock without authority of law, the directors may show, in defense, that certain notes which, had they been properly classed as losses, would have left the corporation without a surplus on the day the dividend was made, were thereafter paid in full, so that no actual loss was sustained by the unlawful payment of the dividend.

2. SAME— PAYMENT TO RECEIVER.
    In an action by the receiver of a bank against the directors, who had declared a dividend when there were no surplus profits, thereby rendering themselves liable under Laws 1892, c. 688 (Stock Corporation Law) § 23, for the amount so withdrawn, it appeared that, prior to the declaration of the dividend, defendants, after consulting the superintendent of the banking department, had delivered to the bank their individual notes, together with a memorandum, reciting that the notes were given to remove a doubt as to the character of some of the receivables of the bank, and to make said bank unquestionably solvent. After the failure of the bank these notes were paid to the receiver. Held, that the money so paid, in excess of the amount necessary to make good the impairment of capital existing when the notes were given, should be applied on defendants' liability arising out of the declaration of the dividend.

3. BANKS—COMPUTATION OF SURPLUS PROFITS.
    Where notes indorsed by K., and discounted by a bank in 1888 for his benefit, were, within one year prior to June 28, 1892, surrendered to one H., who paid them with the proceeds of other notes indorsed by him and discounted by said bank, the new notes were a part of the bank's resources on June 28, 1892, and were not debts owing to the bank, which had remained "due without prosecution" for more than one year, within Laws 1893, c. 696, (Banking Law) § 26, which provides that such debts shall be classed as losses, and deducted from the actual profits, for the purpose of ascertaining the surplus profits.

Action by William N. Dykman, as receiver of the Commercial Bank, against Seth L. Keeney and others. There was a verdict for plaintiff, and defendants move for a new trial on exceptions directed to be heard in the first instance at the appellate division. Granted.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

James C. Bergen, for plaintiff.
Jesse Johnson, for defendants.

BROWN, P. J. The defendants were, in the month of June, 1892, directors of the Commercial Bank, a banking corporation located in the city of Brooklyn, having a capital of $108,000. Said bank was, by a judgment of this court entered in the clerk's office of Kings county on November 4, 1893, dissolved, and the plaintiff was by said judgment appointed the permanent receiver thereof. The complaint alleged that:

"On or about June 28, 1892, the defendants, in violation of law and of the statutes in such case made and provided, declared and made a dividend of four per cent., viz. forty-three hundred and twenty dollars, upon the capital stock of the Commercial Bank; and of such dividend on or about July 5, 1892, paid to the stockholders the sum of forty-two hundred and ninety-three $60/100$ dollars. Such dividend was not made from the surplus profits arising from the business of the corporation. It was a division and withdrawal and payment to the stockholders of a part of the capital stock, and reduced the capital stock in a manner not authorized by law. The defendants were present at the meeting of the directors when said dividend was made and declared, and neither of them caused his dissent therefrom to be entered at large upon the minutes of such directors."

The declaration and payment of said dividend was admitted by the answer, and also the fact that the defendants were present at the meeting when said dividend was declared, and that neither of them caused his dissent therefrom to be entered upon the minutes of the meeting. But the answer put in issue the allegation of the complaint that the payment of such dividend was a division, withdrawal, or reduction of the capital stock of the said bank.

This action is founded upon section 23 of the stock corporation law (Laws 1892, c. 688), which is as follows:

"The directors of a stock corporation shall not make dividends except from the surplus profits arising from the business of such corporation, nor divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of such corporation or reduce its capital stock, except as authorized by law. In case of violation of the provisions of this section, the directors under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large upon the minutes of such directors at the time, or were not present when the same happened, shall jointly and severally be liable to such corporation and to the creditors thereof to the full amount of the capital of such corporation so divided, withdrawn, paid out, or reduced," etc.

The method of ascertaining surplus profits from which alone a dividend can be declared by a banking corporation is prescribed by section 26 of the banking law (Laws 1893, c. 696), and in substance is that, from the actual profits of the institution, there shall, among other items, be deducted all losses sustained by the bank. In the computation of such losses, the statute provides that there shall be included all debts, owing to the bank, "which shall have remained due without prosecution, and upon which no interest shall have been paid for more than one year, or on which judgment shall have been recovered that shall have remained for more than two years unsatisfied, and on which no interest shall have been paid during that period." It is further provided, by section 27 of said law, that all losses sustained by such corporation, subject to this chapter, in excess of its undivided profits then realized and possessed, shall be charged as a reduction of its capital stock.

To establish his case the plaintiff proved that, at the meeting of the directors of the bank on June 28, 1892, the cashier produced to them a statement of the condition of the bank at that date, which showed a surplus, over and above liabilities, including its capital stock, of $97,732.51, and, after making certain corrections in said statement in the expense account, tax account, and discount and rent account, which were made necessary by the system of keeping the books of the bank, it appeared that, assuming the other figures on the statement to be correct, the actual surplus of the bank on June 28th was $105,745. Upon the statement so produced, bills discounted to the amount of $979,059.57 appeared among the resources of the bank; and the plaintiff proved that there was included in this item sundry promissory notes, amounting to $198,862.85, which he claimed should, for the purpose of ascertaining the surplus profits, have been classed as losses, and charged to the account of profit and loss; and he also proved that the resources of the bank, as they appeared upon such statement, were subject to other deductions, which, having been made, showed that, instead of having a surplus at the date of the meeting, the capital stock of the bank was impaired to the extent of $101,975.15.

The defendants contended (1) that of the sum of $198,862.85 there were notes, amounting to $34,000, which did not fall within the debts which, under the statute, were to be classed as losses, but were properly included among the resources of the bank; and (2) that the bank, at the date of said meeting of June 28th, held notes amounting to $80,000 which had been made and delivered to it by the directors, including the defendants, under the circumstances hereinafter stated, which notes had been paid in full to the plaintiff prior to the commencement of this action, and that they should, for the purposes of the trial, have been considered assets of the bank, and included among its resources; and it was their claim that, crediting these two items to the bank's resources, it appeared affirmatively that no loss of capital had been sustained by the declaration and payment of the dividend in question. The record also states that the defendants' counsel called witnesses to prove that various and many of the notes included in the item of $198,362.85 were paid to the bank in full shortly after July 5, 1892, which testimony was, on the plaintiff's objection, and over the defendants' exception, excluded. At the close of the testimony the defendants moved that a verdict be directed in their favor, on the ground that no violation of section 23 of the stock corporation law had been established, and that no cause of action against them had been proven; and to the denial thereof an exception was duly taken.

In reference to the item of $34,000, the case states as follows:

"Defendants proved that, of the notes aggregating $198,862.85, there were notes, aggregating $34,000, which were made by various makers and indorsed by Gilbert N. Hassell, and given within one year prior to the 28th day of June, 1892, and under the following circumstances: Notes for about those amounts had originally, and about the years 1888 and 1889, been made by various parties, and indorsed by De Lorme Knowlton. Said notes were discounted for the benefit of said Knowlton, and charged to him as debtor on the books of the bank, and the proceeds of discount passed to his credit, and used or appropriated by him.

Such notes were renewed as they fell due by new notes indorsed by said Knowlton. Thereafter, and within one year prior to the 28th day of June, 1892, Gilbert L. Hassell produced notes, made by various parties other than said Knowlton, which notes were indorsed by said Hassell, and thereupon said notes so produced were discounted by the bank, and the proceeds credited to said Hassell, and used and applied in payment of the said notes, which the bank then held, indorsed by said Knowlton, and the notes indorsed by said Knowlton were thereupon surrendered to said Hassell, and entry made on the books of the bank that the charges against Knowlton as to the notes were paid."

In reference to the item of $80,000 of notes made by the directors, the case states that the defendants proved that:

"In 1889, eight of the directors of the bank, including all of the persons here defendant, each gave their negotiable promissory note to the bank, payable on demand, for $10,000 each, and that each of the makers of such notes was solvent and responsible; that each of said notes was a good note. Thereupon and thereafter it was proven that, at the time of the giving of such eight notes, a paper was made and signed by the persons giving such notes, and delivered to and remained with the bank, which was produced and read in evidence, and is printed after the testimony herein as Exhibit 8. It is proven that such paper was given after a meeting of the directors of the bank and the superintendent of banks of the state of New York, and after consultation with him. It was also proved and admitted that each of the persons making said notes paid the principal amount thereof, to wit, $10,000 each,—$80,000 in all,—to the receiver, plaintiff herein, shortly after his appointment as such receiver."

And it was agreed that the said eight notes, of $10,000, given as aforesaid, were not included or estimated in the statement produced at the meeting of June 28th by the cashier, and that, if such notes had value, it was to be added to the resources of the bank as they appeared on that statement. The paper, referred to as "Exhibit 8," is as follows:

"Brooklyn, October 11, 1889.

"Whereas, a doubt exists in the minds of the directors of the Commercial Bank, and in the mind of the superintendent of the banking department, as to the soundness and character of some of the debts and receivables of said bank, and in order to remove the doubt so existing, and to make the said bank unquestionably solvent, the directors have each made their note for ten thousand dollars to the bank, making a total sum of eighty thousand dollars, as follows:

"[Signed]　　　Seth L. Keeney, ten thousand dollars.
"Robinson Gill, ten thousand dollars.
"James Lock, ten thousand dollars.
"Elbert Snedeker, ten thousand dollars.
"G. Malcolm, ten thousand dollars.
"Rufus Ressiguie, ten thousand dollars.
"David W. Binns, ten thousand dollars.
"George Wilson, ten thousand dollars."

We are of the opinion that the item of $34,000 of notes is properly to be included among the resources of the bank. The good faith of the transaction in reference to the acceptance and discount of these notes is not questioned, and there is no claim that the purpose of the bank in discounting the new notes was to carry an old loss into the defendants' resources in order to show an apparent, but not a real, surplus. The surrender of the old notes, indorsed by and discounted for Knowlton, and the acceptance and discount of new notes, indorsed by and discounted for Hassell, paid the old debt, contracted in 1888 and 1889, and created an entirely new obligation. It is only debts that are overdue, and have

"remained without prosecution" for more than one year, that the statute requires shall be charged to the account of profit and loss. This provision, clearly, cannot include promissory notes that had not matured, but refers to paper upon which suit might have been prosecuted by the bank more than a year prior to the declaration of the dividend.

The learned counsel for the plaintiff states, upon his brief, that the notes indorsed by Hassell were made by the same parties as the notes indorsed by Knowlton. This statement is not borne out in the record before the court; but, if the fact were so, we do not see that it would require a different conclusion. The bank could not have prosecuted a suit upon the old notes, nor could any interest accrue thereon to the bank after their surrender. The bank then held an entirely different contract, with different parties, and the old obligations had been surrendered to Hassell, who alone could sue upon them, and to whom interest accruing thereon would be due; and, as the new contract with the bank had its inception within a year prior to the declaration of the dividend, the money secured thereby was properly included among the bank's resources.

With reference to the offer of proof of payment of many of the notes included in the item of $198,362.85, we are of the opinion that the admissibility of this testimony depended upon the construction that is to be put upon section 23 of the stock corporation law. If the liability therein imposed upon the directors of a corporation is to be treated as a penalty, this testimony was properly excluded; but, if it is to be treated as an indemnity for loss which the corporation or its creditors might sustain from the payment of an illegal or unauthorized dividend, then, in our judgment, the ruling of the trial court was erroneous. We are of the opinion that the latter view is the correct one. By section 25 of the banking law many penalties are created for which the corporation or its officers may become liable; but none is imposed upon the officers of the corporation for a failure to observe or to follow strictly the provisions of section 26 in determining the surplus from which to pay dividends. The only liability created for that act is one which requires the directors assenting thereto to make good to the corporation or its creditors the amount of the capital withdrawn as a result of the declaration and payment of the dividend. This result, by force of the statute, follows the failure to deduct from the actual profits debts that should be classed as losses, whether that failure is intentional or a mere error; and the effect of the statute is to make the directors guarantors of every debt which it is prescribed should be charged to the profit and loss account, but which the directors have omitted to so charge, to the extent that the payment of the dividend may reduce the capital below the sum fixed in the charter. It is the loss sustained by the bank that the directors must make good. If no loss is sustained by the payment of a dividend, then, although there may have been violation of law, and wrongdoing, no liability is created. To illustrate: Suppose, in calculating the profits from which to pay a dividend, by mistake, a note overdue for a year and a day, and on which no

interest had been paid or no suit commenced, should be included in the resources of the bank, which, if it had been charged to profit and loss, would have left the bank without a surplus. Suppose, also, that on the day following the payment of the dividend, such note should be paid in full to the bank. It could not, in such a case, it seems to me, be said that the bank had in fact sustained a loss from the payment of the dividend, or that the capital had been thereby reduced, or a part thereof paid out. Yet such would be the conclusion we should be forced to adopt if the directors' liability is to be finally determined and irrevocably fixed on the day the dividend is payable. A construction of the statute which would permit such a result is unreasonable and unjust, as it would permit the bank or its creditors to collect the old debt, which should have been charged to the profit and loss account, and, after its payment, to enforce the liability against the directors for a loss that was not in fact sustained. The capital stock being a fund intended to be kept intact, to secure the solvency of the corporation and its responsibility to its creditors, the purpose of the statute is fulfilled in holding the directors to a liability for losses which actually result from their act, and not from those which are apparent only on the day the dividend is payable, but which are made good thereafter by the payment of the very debt which, in order to establish the directors' liability, must be treated as a loss.

It follows, from these views, that the testimony that many of the notes included in the item of $198,362.85 had been paid to the bank shortly after July 5, 1892, should have been received, and, if it had appeared that sufficient of these notes had been paid to make good the impairment of the capital that existed by treating such notes as losses, the fact would have been established that no actual loss had been sustained by the payment of the dividend in question. We are also of the opinion that, by the payment of $80,000 by the directors to the plaintiff upon the notes for that amount which were held by the bank at the time the dividend in question was declared, any liability incurred by that act has been discharged. That these notes were supported by a sufficient consideration is beyond question. The defendants were directors and stockholders in the bank. It was to their interest and direct benefit that the bank should be permitted to continue to carry on and transact its business. This it could do only by making good any impairment existing in its capital. If an impairment of the capital did exist, the superintendent of the banking department of the state was authorized to require such deficiency to be made good within 90 days after notice thereof by him to the directors; and, in case such requisition was not complied with, the attorney general, upon the requirement of the state superintendent, was authorized to proceed against the bank as an insolvent corporation. Laws 1882, c. 409, § 17. While the question whether the capital was impaired at the time the notes were given was not determined, nor did the superintendent of the banking department make any requisition upon the directors to make good any specific deficiency, still the doubt existing on that question in the mind of the superintendent, arising out of the char-

acter of some of the debts and bills receivable due to the bank, and the interest of the directors in the continuance of the bank as a sound financial and business institution, constituted a sufficient consideration to support the notes of the defendants given to make good any possible deficiency which did exist. These notes, therefore, became, upon their delivery, debts due to the bank.

Section 23 of the stock corporation law forbids the declaration of dividends except from surplus profits arising from the business of the corporation. It forbids the withdrawal of any part of the capital stock except as authorized by law, and, in case of the violation of these provisions, it declares the directors liable to the corporation or its creditors to the amount of the capital withdrawn. This provision was a substantial re-enactment of section 2, c. 18, pt. 1, tit. 4, Rev. St. The latter section was considered by the court of appeals in Williams v. Telegraph Co., 93 N. Y. 162, and it was there held that its purpose was to prevent the depletion of the property of the corporation, thereby endangering its solvency. It was likewise held that, whatever property the corporation had, up to the limit fixed by its charter, must be regarded as its capital. That these notes of the directors were a part of the property of the corporation is not open to question. But they were not absolute obligations, payable to the bank at all events. They were conditional upon the existence of an actual impairment of capital at the date of their delivery. In a sense they were collateral to uncollectible debts due to the bank, the nonpayment of which would create a deficiency of capital. Such is the fair import of the paper executed by the directors and deposited with the bank, and they are so treated by the learned counsel for the receiver. These notes, and the memorandum which accompanied their delivery, are evidence of an agreement entered into by the directors with the superintendent of the banking department; and that agreement is to be construed and enforced in accordance with the plain meaning and intention of the parties. The makers of the notes assumed a liability to the bank to make good any impairment of capital which existed in October, 1889, and the notes could be enforced by the bank or its creditors for that amount, and for no more.

Treating the Hassell notes as properly included among the bank's resources, the impairment of capital existing at the date of the delivery of the notes is shown by the record before us not to have exceeded $68,000. This sum the defendants have paid, and their liability upon the notes has been discharged. But it appears that they have paid the full amount of the notes, to wit, $80,000, or $12,000 in excess of the liability assumed in October, 1889; and I do not see why the latter amount is not properly applicable to discharge any indebtedness to the corporation or its creditors which arose out of the declaration of the dividend in question. The payment of this sum of $12,000 to the plaintiff, and its relation to the liability now sought to be enforced against the defendants, may be considered entirely apart from the notes given in October, 1889, or the agreement with the superintendent of banks to make good the impairment of the capital which existed at that date. It is

not shown that the defendants incurred any other liability than that for the dividend of June, 1892, and, in the absence of such proof, there is no legal or equitable objection to applying the sum paid as aforesaid to the plaintiff to discharge that liability. The fact appears, therefore, we think, without dispute, that the liability assumed by the agreement with the superintendent of banks in 1889, and that incurred by the declaration and payment of the dividend in June, 1892, has all been paid and discharged, and that the bank has suffered no loss from the last-named act. The plaintiff represents, in his capacity as receiver, both the corporation and its creditors; and a payment to him was as effectual to discharge defendants' liability as if it had been made to the corporation before its failure. We are of the opinion, therefore, that, upon the whole case, the plaintiff failed to make out a cause of action, and that the motion to direct a verdict should have been granted.

The exceptions must, therefore, be sustained, the verdict set aside, and the motion for a new trial granted, with costs to abide the event. All concur.