## VOLUME 54,

AND

# New York State Reporter,

## VOLUME 88.

---

(34 App. Div. 45.)

### DYKMAN v. KEENEY et al.

(Supreme Court, Appellate Division, Second Department. November 3, 1898.)

1. BANKS AND BANKING—EXTENDING DISCOUNTS AND OVERDRAFTS—EVIDENCE
—SUBMISSION TO JURY.
　　Laws 1892, c. 689, § 26, requires that all debts owing a bank which
had remained overdue a year without prosecution or payment of interest
shall be computed as losses. A bank, being creditor of a depositor for
overdrafts, took his notes for the principal and interest, and marked
the overdraft "Paid," and before a year marked two of the notes "Paid,"
and charged the amount to the depositor's account as an overdraft.
That overdraft was marked "Paid," and taken up by new notes. There
were other transmutations of the form of such indebtedness, but no
money was ever paid on the principal or interest. *Held* sufficient to re-
quire a submission to the jury whether such transactions were merely the
taking up of defaulted notes, in evasion of the statutes, or were loans in
the regular course of business.

2. SAME—CUSTOMS OF OTHER BANKS—ADMISSIBILITY.
　　On an issue whether purported loans in extending a depositor's paper
and taking up its overdrafts were loans in the regular course of busi-
ness and in good faith, evidence of the custom of extending discounts
in other banks is inadmissible.

　　Appeal from trial term, Kings county.
　　Action by William N. Dykman, as receiver, against Seth L. Keeney
and others. From a judgment for defendants, dismissing the com-
plaint, plaintiff appeals. Reversed.
　　Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

　　James C. Bergen, for appellant.
　　Alfred E. Mudge and Henry M. Dater, for respondents.
　　54 N.Y.S.—1

CULLEN, J.    This action is brought by the receiver of the Commercial Bank to recover from the defendants, who were formerly directors of the bank, the amount of a dividend declared by them in December, 1892, on the ground that at the time the bank had no surplus profits.    A similar action has already been twice before this division of the court.    Dykman v. Keeney, 10 App. Div. 610, 42 N. Y. Supp. 488; Id., 16 App. Div. 131, 45 N. Y. Supp. 137.    On the first appeal a judgment rendered in favor of the plaintiff was reversed, and on the second appeal a judgment for the defendants, entered on a verdict by direction of the court, was affirmed.    The opinions rendered by the court on these appeals discussed fully the general principles pertaining to the maintenance of the action and the liability of the defendants as directors, and also the basis or method of the computation by which the financial condition of the bank should be determined.    It is therefore necessary for us to consider on this appeal only the question presented by the additional evidence adduced on the trial of the present action as to the character of certain securities held by the bank at the time of the dividend.

As to the financial status of the bank, it is sufficient to say that on the face of the books there was an apparent surplus, which the plaintiff sought to convert into a deficiency by showing that various items were improperly credited as assets.    It was proved that these notes or securities, while, by their terms, they were not in default with interest unpaid for over a year, were renewals of previous obligations, the original loans having been made in some cases as far back as six years prior to the time of the dividend; and that during such time neither interest nor principal had been paid, except so far as the interest was included in the amount of the renewal notes, or in separate obligations.    One class of notes had been renewed in this manner from 6 to 23 times.    Among the assets of the bank were four notes of the St. Kivin Mining Company, aggregating $93,181.92.    The following is their history: · On October 1, 1889, the mining company, a depositor with the bank, had overdrawn its account to the extent of nearly $90,000.    Interest was computed on this sum, and four notes were taken for the principal and the interest of the overdraft, and the overdraft marked "Paid."    On March 12, 1890, two of these notes were marked "Paid," but no money was received by the bank.    The account was adjusted by charging the amounts of the notes to the deposit account of the mining company as an overdraft.    The overdraft was subsequently marked "Paid," but in fact was paid only by giving new notes.    There were other transmutations in the form of this indebtedness prior to the declaration of the dividend, but nothing was paid on the debt, principal or interest, from its original inception.    The history of the other securities was of a similar character, payments being made thereon only by bookkeeping entries, or by giving new obligations.    Under the statute (section 26, c. 689, Laws 1892), all debts owing the bank which had remained due without prosecution, and upon which no interest had been paid for more than a year, or on which judgment had been recovered, and remained for more than two years unsatisfied, were to be computed as losses.    In

the case in 16 App. Div., at page 131, 45 N. Y. Supp. 137, we held that where a new obligation was given by a new party for an old debt of another party, even though the new obligation included the arrears of interest accrued upon the old, the interest on the obligation was not unpaid, within the meaning of the statute. We are not prepared to say that the same rule would not obtain even where the new obligation is only that of the original debtor. But Justice Hatch, in writing the opinion of the court in the case referred to, was careful to limit the rule to cases where renewals were discounted in the ordinary course of business, and where the contract was not renewed for the purpose of evading the statute. In the case then before us there was nothing to show that the renewal was not a fair, ordinary business transaction. If a mercantile firm in good standing should obtain a line of discount with its deposit bank, we think it would be unreasonable to hold that it was in default as to the interest on its notes at one time because a critical examination or analysis of the account might show that at a later period its discounts with the bank were greater than the amount of the previous notes and the interest thereon. So, also, if one should obtain a loan on collateral where the value of the security far exceeded the amount of the loan, it would certainly be a fair business transaction to renew the note, with interest added, if the collaterals would still be reasonable security for the enhanced amount. We held that the form of the transaction was not controlling, but its substance. Ordinary course of business includes such loans as would ordinarily be made by an institution seeking to loan its funds that it might receive the interest thereon; not the taking of new obligations from insolvent debtors, or the carrying along of a bad debt in a new form. The evidence of the inception and subsequent history of the debts represented by the securities we have spoken of was sufficient to require at least the submission of the question to the jury, as one of fact, whether the notes had been taken in the due course of business, and whether the amounts of accrued interest included in the new notes were really loans of money, such as would have been made apart from any prior relation of the debtors to the bank, or whether they were taken merely to cover defaulted debts. We are therefore of the opinion that the direction of the trial court dismissing the complaint was erroneous.

As the question will arise on another trial, we think that we should express our view concerning the competence of the evidence offered by the plaintiff as to the custom of extending discounts in other banks. We think the evidence was properly excluded, and that the character of these loans was to be determined by the jury, on proof of their history, and the circumstances under which they were made, and was not the subject of expert testimony as to the custom in other banking institutions.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.