For the error pointed out, the judgment of the trial court will be reversed, and the cause remanded.

---

## GOODIER v. BURNETT. (No. 879.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 8, 1922.)

Corporations &#9750;186—Stockholders' interest in continuance of corporation held sufficient consideration for notes given by them to it as donations to avert insolvency.

The interest of stockholders in the continuance of the corporation as a sound financial and paying business institution *held* sufficient consideration for notes given by them to the corporation as donations to enable it to avert insolvency.

Appeal from Jefferson County Court; D. P. Wheat, Judge.

Action by S. G. Burnett against E. J. Goodier. Judgment for plaintiff, and defendant appeals. Affirmed.

Gordon, Lawhon & Pool, of Beaumont, for appellant.

A. Ludlow Calhoun, of Beaumont, for appellee.

O'QUINN, J. Appellee sued appellant in the justice court, precinct No. 1, Jefferson county, Tex., on a note for the sum of $200, which had been executed by appellant to the Beaumont Dairy Products Company, a corporation, and of which appellee was the holder. Appellant answered by general demurrer, general denial, and specially pleaded want of consideration. The case was tried before the court without a jury, and judgment rendered for appellee, from which appellant appealed to the county court at law of Jefferson county, and a trial de novo had before the court without a jury, and judgment there rendered

for appellee, from which judgment this appeal is taken.

The record discloses that the Beaumont Dairy Products Company was a corporation duly chartered and doing business in the city of Beaumont during the year 1917. Its stock was nonassessable. Appellant and appellee, among others, were stockholders in said corporation, appellee being its secretary-treasurer. In the first part of the year 1917, at different times, the corporation found itself in financial difficulties. In April of that year it was so situated, and about to become insolvent, and at a meeting of a majority of its stockholders, it was mutually agreed to donate and contribute additional funds to the corporation, for the purpose of relieving its financial strain. Appellant was not present at said meeting, but was afterwards advised of the action of the stockholders by appellee. The agreement was that each stockholder was to donate and contribute a sum of money equal to a certain per cent. of the amount of his stock, and some of the stockholders paid their donations in cash and some gave their notes; appellant being one of those who gave his note. When appellee called on appellant and informed him of the action of the stockholders in agreeing to donate funds to the company, he at first demurred, and said that he thought it would be money thrown away; that he had no hopes of the corporation pulling through; that he had no money to contribute or donate to the corporation; that he would surrender his stock over to the corporation rather than donate additional funds, but when appellee stated to appellant that some of the stockholders had given their notes for the amount of their donations, and that he, appellant, could do so, appellant then made his note in the sum of $200, due in 90 days after date, payable to the order of the company. The company continued to do business until in November, 1917, and not being in any better condition financially than before, appellee, to whom the company was considerably indebted, applied for a receiver to be appointed for said company, which was granted, and the company operated under said receivership for about one year, when the assets of said company were sold by the receiver at public sale, and same were bought by appellee. Among the assets of said company sold and delivered to appellee was the note in question, upon which there had been a payment of $50, which had been made before the receivership was had. Appellant says that he did not make the payment, nor authorized it to be made. The record shows that when the note became due, July 20, 1917, R. A. Judd, bookkeeper for said company, presented the note to appellant for payment, Judd testifying:

"I presented the note to E. J. Goodier for payment, the note being the same note set out in the testimony of S. G. Burnett, and Mr.

&#9750;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Goodier stated, when I presented the note to him on or about July 20, 1917, that he could not pay the note. On July 27, 1917, I went back to the Thames Drug Store with the note, and Mr. Thames and Mr. Goodier held a conversation, but I don't know what was discussed between them, and then Mr. Thames gave me a check of the Thames Drug Company for $100, payable to the Beaumont Dairy Products Company, and asked me to credit $50 on his note, and $50 on E. J. Goodier's note, and Mr. Thames gave me the check."

The only question for our determination is whether there was any consideration for the note. Appellant contends that the note was without consideration, in that same was executed and delivered to said company as a donation, and that appellant received nothing in consideration therefor, and hence the note was not and is not a binding obligation upon appellant. If the note was not based upon a valuable consideration, then the judgment should be reversed and rendered, but if there was a sufficient consideration for the note, then the judgment should be affirmed.

It is clear that the note in question was intended and executed as a voluntary contribution and donation to the Beaumont Dairy Products Company for the purpose of relieving its financial difficulties, and to enable it to continue in business. It is also clear that the note was so accepted by the company, and that same was not negotiated by the company, but retained in its possession, and that the failure of appellant to pay said note was not the cause of the company's being placed in the hands of a receiver. It is also undisputed that appellant did not owe the company anything.

Appellant grounds his contention that the note was without consideration on the law of gratuitous gifts, and discusses the two kinds, gifts inter vivos and gifts causa mortis, and asserts that under the rules of law governing same—

"the note, which is the subject-matter of the case at bar, having been executed by defendant as a gift or donation to the Beaumont Dairy Products Company, cannot be enforced against him in law, unless the payee in said note had, subsequent to the execution thereof, become indebted to other parties relying on defendant's promise to make said gift or donation by paying said note, and, the pleadings and evidence in the case failing to establish such a contention, it is proper to assume that the payee in said note did not become involved with and indebted to third persons relying on the defendant's promise to make such donation or gift by paying said note."

With the elementary propositions advanced by appellant, we have no cavil, but we do not believe that, under the facts of the case at bar, it falls within same. We think that the note was based upon a sufficient consideration. We have here a corporation organized and doing business for profit. The appellant is one of its stockholders. His investment is represented by his stock, and its value depends upon the operation and success of the corporation. It is to his interest that the corporation should be operated and known and maintained as a sound business and financial concern. It having reached that stage where it was about to cease operations, and was on the edge of bankruptcy, the stockholders mutually agreed to donate funds for its support and to make it possible for it to avert insolvency and to work itself out of the financial dilemma in which it was situated. Those giving money or notes were stockholders of the corporation, and it meant loss to them, through a fall in value of their holdings, if the business ceased to operate, thus causing their stock to become of less value, and probably worthless. They gave money and notes to aid the corporation, hoping that the business would, in some way, make good. They made their donations, and the business was continued for a time. Thus, a contract was made upon a sufficient consideration between the maker of the note on the one hand and the corporation on the other. Certainly, those who thus donated secured a distinct benefit, which accrued directly from the contract, for each share of stock which they held represented a definite part of the corporation's assets, and whatever increased the assets benefited the stockholders. Therefore the interest the stockholders had in the continuance of the corporation as a sound financial and paying business institution constituted sufficient consideration to support the notes given, and the notes became, upon delivery, debts due to the corporation, for which it could maintain an action. Lillard v. Decatur Cotton Seed Oil Co., 14 Tex. Civ. App. 67, 36 S. W. 792; Bank v. Sullivan, 214 N. Y. 332, 108 N. E. 558; Dykman v. Keeney, 10 App. Div. 610, 42 N. Y. Supp. 488–493; Id., 160 N. Y. 677, 54 N. E. 1090; Brodrick v. Brown (C. C.) 69 Fed. 497; Bank v. Nelson, 38 Utah, 169, 111 Pac. 907; 1 Cook on Corporations, 76, p. 323 et seq.

At the time of the agreement by the stockholders to contribute funds to aid the corporation, some of the stockholders paid their part in cash, and the others executed their notes, appellant executing the note in question. The note in form was a promise by the maker to pay to the corporation the sum specified. The note was delivered to and accepted and held by the corporation. The legal effect is to be considered with the understanding which brought about its creation, and was a part of the transaction. The understanding was that, to assist the corporation financially, the stockholders were contributing an amount to the corporation in proportion to the stock held by each. Unless a liability attached to the note upon its delivery to the corporation, it would be no more solvent after the transaction than before, in so far as the note in question was concerned.

The purpose was to help the corporation stay in business—a contribution of capital to the corporation for the purpose of creating a liability in support of its debts. This proposition was not to provide for a contingent liability in the sense that the corporation should have no interest therein unless insolvency was subsequently ascertained to exist, but was to create a present condition of solvency, and, in order for this to be accomplished, it was essential that the note have actual present vitality as an absolute promise and liability to pay.

Cook on Corporations, supra, says:

"When the solvent stockholders agree that they will severally contribute to raise a fund to pay the corporate liabilities, the agreement is valid and enforceable, and each must contribute in the proportion that the number of shares held by him bears to the number of shares held by all those who enter into the agreement."

In Bank v. Sullivan, supra, the superintendent of banks had taken possession of the bank, and brought suit against Sullivan and others to recover upon a promissory note. The defendants were stockholders and directors of the bank. The note was for $150,000, and was voluntarily executed by the defendants for the purpose of making good that amount of worthless assets held by the bank, rather than charge them off against the surplus of the bank, thus impairing its capital and credit. The court held the note was supported by sufficient consideration and the makers liable.

In Dykman v. Keeney, supra, the suit was by Dykman, as receiver of a bank, against Keeney and others, who were stockholders and directors of the bank, and who had each made a note to the bank for $10,000. The notes were made to carry out an agreement on the part of the stockholders and directors to remove any doubt as to the solvency of the bank; the same having become questionable. It was held that the notes were supported by a sufficient consideration, and this was affirmed by the New York Court of Appeals in 160 N. Y. 677, 54 N. E. 1090.

In Brodrick v. Brown, supra, the suit was by the receiver of the First National Bank of San Bernardono, against Brown, who was the president of the bank on three notes, one for $3,000, one for $5,000, and another for $7,000. Payment of the notes was resisted on the ground that defendant had loaned the bank $20,500, which had not been paid, and which he invoked as an offset. The plaintiff insisted that the $20,500 was advanced to the bank by defendant, not as a loan, but as a contribution voluntarily made for the betterment of the stock, to enable the bank to resume business; it at the time being in the hands of a bank examiner. The facts showed that the stockholders voluntarily contributed a sum equal to 50 per cent. of their stock, the whole amounting to $50,000, and placed same in the bank, and resumed business. The court held:

"The law is well settled that when stockholders voluntarily assess themselves, to relieve the corporation from pecuniary embarrassment, or for the betterment of their stock, whatever may be the occasion of the assessment, the advances thus made are not debts against, but assets of, the corporation."

Lillard v. Decatur Cotton Seed Oil Co., supra, is quite similar to the case at bar. The Decatur Cotton Seed Oil Company was a corporation, and it became in debt and was without funds to pay same. The stockholders mutually agreed that they would contribute funds to meet its indebtedness in proportion to the stock by them severally held. Some of the stockholders paid in money, and Lillard made a note for his part. The court held:

"The corporation was an entity, in which each of the stockholders was interested. It was in a certain sense their representative. The personal profit and advantage of each were involved in the payment of the debt of the plaintiff. The agreement of each stockholder looked as a source of benefit to the compliance with a similar agreement upon the part of each of the remaining stockholders. Such an agreement rests upon a sufficient consideration, especially after a compliance with it on the part of some of the stockholders, as was the case with Waggoner and Greathouse. The relief sought by the plaintiff does not rest, as the appellant misapprehends, upon the doctrine of contribution, which arises purely out of the relations of the parties, but it rests upon a contract supported by a valid consideration."

And the Supreme Court refused a writ of error.

It appearing that the law and the facts fully support the judgment, the same is in all things affirmed.