## CARTLEDGE v. BILLALBA et al.

### No. 4079.

Court of Civil Appeals of Texas. El Paso.

June 19, 1941.

Rehearing Denied Sept. 25, 1941.

A. E. Owens, of Alpine, and Mead & Metcalfe, of Marfa (Lea & Edwards, of El Paso, on the brief), for appellant.

Morriss & Morriss, of San Antonio, and Frank O. Ray, of Alpine, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Brewster County by R. L. Cartledge from an order restating his

final account as administrator of the estate of Federico Billalba, deceased. The proceedings originated in the County Court of Brewster County, the initial proceeding being a bill of review filed on July 20, 1939, by Severa Billalba, surviving wife of Federico, joined by several children of the deceased Billalba by a former marriage, seeking to set aside the approval of the report of appellant as temporary administrator of the estate of Billalba, the order of approval being dated the 11th day of August, 1933; seeking to set aside an order approving what is termed the "Second Account" of the administrator dated May 16, 1939. In the prayer of the bill many other forms of relief were sought, such as requiring a full accounting and determination of the administrator's liability to the estate.

On April 29, 1939, appellant, as administrator, filed in the County Court what was denominated as his "Second Report." The order of approval of this second report was assailed.

On September 25, 1939, appellant filed in the County Court what was denominated as his "Amended Final Account."

On March 25, 1940, appellees filed contest to the final account of the administrator.

On September 25, 1939, appellant filed answer to the bill of review and the objections to his final account.

This seems to be the record as shown by the transcript. However, on March 25, 1940, appellees filed supplemental petition to the appellant's answer.

There is no real question on the pleadings in this case, and same are sufficient to raise the issues to be discussed.

On the 5th day of April, 1940 the County Court entered an order approving the final amended account of appellant as tendered, and overruling the contest denying appellees (here) relief on their bill of review. The order further sets forth the rights of appellees (here) in the property, and orders appellant to distribute the estate among them in accordance therewith.

Appellees here perfected an appeal from this order to the District Court of Brewster County.

On August 16, 1940, appellant (here) filed in the District Court a plea to the jurisdiction, which was upon the same day overruled by the court. On the same day appellant Cartledge filed what he denomi-nated as "supplemental pleadings," replying to the pleadings filed by appellees. It was largely a reply to contestants' (appellees here) contest of his final account. Also appellant filed on the same day a separate pleading replying to appellees' bill of review.

On August 21, 1940, appellees filed in the District Court a trial amendment to their contest of the final account of the administrator.

On August 24, 1940, appellant filed a trial amendment.

The trial was to the court with a jury, the submission on special issues. On the verdict returned the court entered judgment restating the final account and decreeing that the administrator was liable to account for the sum of $4,488.03 in money, and decreeing that the administrator had on hand certain livestock which was the property of the estate and certain other livestock in which the estate had an undivided one-half interest. An immediate settlement of the estate was ordered. All relief was denied on the bill of review except as evidenced by other portions of the judgment. The judgment was ordered certified to the County Court for observance.

A statement from the pleadings and some of the issues submitted to the jury will be hereafter made as deemed necessary in the disposition of the appeal.

A general outline of the facts as presented by the evidence will perhaps aid in a better understanding of the issues.

Federico Billalba, a resident of Brewster County, died intestate on the 7th day of January, 1933. He left surviving him appellees who are, respectively, his wife and children by a former marriage. On March 20, 1933 appellant filed application in the County Court to be appointed temporary administrator. His application recited that the principal part of the estate consisted of livestock scattered on a ranch in the Chisos Mountains, and that same were under mortgage. March 27, 1933, appellant was, in accordance with his application, appointed temporary administrator. Bond was fixed at $1,000, and authority was given to take possession of all property of the estate and to carry on, gather and brand all livestock, and to sell any of same as might be advisable, and to apply the proceeds to the expenses of administration and whatever debts might be filed against the estate. The order further provided that the ap-

pointment was to be in effect until same was made permanent, unless contested, and the same would be permanent if the court was of the opinion that such permanent administration was necessary. Appellant promptly qualified as temporary administrator. No citation ever issued on the order relative to making the administration permanent. On August 5, 1933, appellant filed in the County Court a report as temporary administrator showing there had come into his hands as such 207 head of branded mixed cattle, 462 goats, 14 mules, 20 mares and fillies, and 8 saddle horses; that he had sold, specifying, certain of the livestock and certain of the other property for the total sum of $1,538.04. The livestock on hand was likewise enumerated in the report. Expenses in the sum of $334.12 were set forth, and commissions were charged on the amount collected and the amount paid out. After deducting expenses and commissions, a balance of $1,-110.32 was shown to be on hand. The report sets forth that no claims had been paid, but that there were claims to be allowed, Chisos Mining Company, $2,172.07; La Harmonia Company $553.—; that there might be other just claims to be allowed. The report further sets out that no charge would be made by the administrator for commissions nor for car hire, but he expected to make a reasonable charge for attorney's fees on his final report. Approval of the report was prayed for, and it was further recited in substance that if the court deemed it necessary to continue the administration by making him permanent administrator, he would serve. The report was verified.

On the 11th day of August, 1933, the court entered an order approving the report and ordering appellant to deliver the property to the permanent administrator. On the same day the court entered an order appointing him permanent administrator. Appellant did not file a bond as permanent administrator nor take the oath as such. He failed to file an inventory and appraisement of the estate, and has never filed same. He did not make any report on the condition of the estate until the 29th day of April, 1939. Prior to the filing of the report he had been cited by the court to show cause why a report should not be made. This report is denominated as his "Second Report." This report showed receipts in the sum of $4,782.31, expenses in the sum of $1,127.82, credit balance with

the Chisos Mining Company in the sum of $3,654.49. Evidently in the receipts is a balance from the temporary administration, and likewise included in the expenses are the expenses allowed in the temporary administration.

On September 25, 1939, appellant filed what he denominated as his "Amended Final Account." This is the account in question here, and is the one restated by the judgment appealed from. In this account he charges himself with the sum of $1,196.41, as cash balance on hand at close of temporary administration; cash receipts from all other sources since the closing of the temporary administration, $3,812.57. Receipts totalling $5,008.98. As disbursements he lists "Debt paid to Chisos Mining Company, $2258.16; debt paid to La Harmonia Company, $397.30; expenses in handling the estate $977.43." Showing a balance of cash on hand of $1,376.09.

This account was restated by the court as follows:

| | |
|---|---:|
| Cash balance on hand at close of temporary administration, | $1,196.41 |
| Cash value at the time of sale of certain enumerated property, | 3,401.31 |
| Interest charged against the administrator, | 880.91 |
| Reasonable cash value of goats unaccounted for, | 489.00 |
| Highest intermediate cash sales wholly unauthorized, less offsets allowed, | 682.00 |
| Total | $6,649.63 |

Credits were allowed as follows:

| | |
|---|---:|
| Amount allowed for payment on claim of Chisos Mining Company, | $ 694.37 |
| Amount paid La Harmonia Company, | 397.30 |
| Amount of expenses in handling Estate, | 969.93 |
| Attorney's fees, | 100.00 |
| Total | $2,161.60 |

As shown by the three accounts filed by the administrator the receipts were almost entirely from the sale of livestock belonging to the estate.

The account filed by the administrator sets up the entering into a contract with Charles Burnham, by which Burnham was to pasture and care for 53 cows, 113 heif-

ers, 5 steers, and 6 bulls, at his own expense, in consideration of which he was to receive one-half of the increase. Part of the receipts arise from the sale of the one-half interest in the increase which the administrator was to receive for the estate. Some of the cattle on hand are the property of the estate subject to Burnham's one-half interest therein.

Appellant claimed a total credit for expenses and advancements in the sum of $977.43. On restatement the District Court allowed $969.93. This deduction was assented to by appellant. In addition, the court on restatement allowed $100 as attorney's fees.

Appellant claimed credit for the sum of $2,258.16 as paid in satisfaction of a claim in that amount held by the Chisos Mining Company. The pleading of appellant shows that such claim was never presented to him as an administrator, that he has never allowed same, and that same has never been allowed by the County Court. He alleges that same was a valid claim unbarred by limitation at the time same was paid. The District Court allowed this claim for only $694.37. This item is the largest single item involved in this appeal. Involved is the sum of $1,563.79. It was claimed that this item represented a note in the sum of $2,000 executed and delivered by deceased Billalba to the Chisos Mining Company on the 1st day of July, 1932, due by its terms six months after date; $105.17 for goods, wares and merchandise furnished deceased prior to his death; further that the Chisos Mining Company advanced $152.90 for the funeral expenses.

Appellant's pleadings showed that the note was executed and delivered for a consideration that was largely executory. The consideration for the note and the mortgage securing same was goods sold and to be sold to Billalba. The allegation is that before the note matured $2,105.17 had been sold and delivered.

■ Before an administrator is entitled to a credit on his final account for payment of a claim which has not been allowed, same being in existence at the death of the intestate, the burden is upon him to show the extent and validity of such claim. If this claim was paid, it was paid without conformity to any of the applicable statutes for the insurance of the validity of claims against an estate. See Articles 3514, 3516, 3519 and 3520, R.S.1925. How-

ever, when an administrator is charged with the burden imposed by his disregard of the law applicable, he may, upon a showing that a claim was valid when he paid same, receive credit on his final account. Trammell v. Blackburn, 116 Tex. 388, 292 S.W. 169.

■ This burden is, we think, something more than a prima facie showing of validity such as might justify an allowance of same in an adversary proceeding between the administrator and claimant. Article 3514, R.S.1925, requires that the affidavit be that not only the claim is just but also that all legal offsets, payments and credits known to affiant have been allowed. In a general sort of way this, we think, is the burden placed upon the administrator. In a way he justifies his action under the rights of the claimant. He perhaps under most circumstances succeeds thereto.

■ Applying the above proposition we think at least before the $2,000 note be allowed it must be shown that goods of the agreed value of $2,000, or the fair market value in that amount, were delivered to Billalba before his death; as to the $105.17 claimed for goods in excess of the $2,000, that same were actually furnished and the fair market value thereof; as to the $152.90 claimed to have been advanced for funeral expenses, that same was actually advanced by the Chisos Mining Company.

■ It is elementary, of course, that a promissory note may be given on an executory consideration in whole or in part, but where an administrator claims credit on final account for payment of such a note, his claim disclosing that the consideration thereof was executory and that same had never been legally allowed, we think it is incumbent upon him to show that the consideration had been received by the deceased. As to this claimed credit of $2,-258.16, it is to be noted that there is no finding of the jury that same is a just claim. The court did find same as a matter of law was just and fair to the extent of $694.37. But if the evidence left an issuable fact as to the balance, appellant must fail thereon, because the burden was upon him to establish this fact to entitle him to the credit. Payment alone would be insufficient to entitle him to the credit in the absence of a showing as to the justness of the claim. It is likewise elementary that an administrator paying on an unallowed

claim, barred by limitation at the time of payment, is not entitled to credit therefor.

 In seeking to appraise the sufficiency of the testimony in regard to the validity of the items of this claim, two things must be borne in mind: first, that appellant was at all relevant times herein the manager of the Chisos Mining Company and likewise the administrator seeking credit for an alleged claim; as to the validity of the claim we are relegated to his testimony as to what was shown by the records of the Chisos Mining Company. None of the original records of that Company were introduced in evidence. The sole verification of their correctness was the testimony of appellant. Among the documentary evidence were some loose-leaf ledger sheets which, we gather from the record, purported to be a copy of the account of Federico Billalba, Sr., with the Chisos Mining Company from January 1, 1926, to January 15, 1936. At least the former is the opening entry and the latter the closing entry on the sheets in question. A perusal of this account fails to show that on July 1, 1933, there was anywhere near the sum of $2,000, or anything like that amount, owing by Billalba on that date. Also these sheets fail to show that on January 1, 1933, there was anything like the amount of $2,000 owed by Billalba to the Chisos Mining Company; likewise as to January 7, 1933, the date of Billalba's death. Copies, we presume, of loose-leaf ledger sheets of the account of F. F. Billalba and Santos Billalba are shown. The briefs fail to point out any bearing these accounts may have on the issues here involved. Aside from the books, as to the $2,000 note, there is no evidence that the executory part of the consideration thereof was ever received by Billalba. The evidence of the books as here reflected fails to show it.

In the consideration of the evidence as to the validity of the claim of the Chisos Mining Company against the estate of Billalba we are concerned with the situation at and prior to his death. Book entries, copies of book entries, or written statements, made subsequent to his death can have no evidentiary bearing thereon. The note in the hands of the Chisos Mining Company was not in the hands of an innocent purchaser. In its hand it was valid and just only to the extent it had given a consideration therefor. The evidence entirely fails to show what, if any, merchandise was delivered to Billalba as consideration for the $2,000 note. In our opinion there is no evidence of any probative value subsequent to July 1, 1932, and prior to January 7, 1933, there were any goods, wares and merchandise delivered to Billalba. If we give the purported ledger sheets, or rather the copies thereof, reflecting his account on the date of his death full credit, it appears that on that date Federico Billalba owed a balance of $547.78. On July 1, 1932 and January 7, 1933, the date of his death, charges were made against him totalling $264.02. On July 20, 1932, a credit appears in his favor of $195. Turning to the statement dated August 24, 1936, purporting to be a statement of the account of Federico Billalba Sr., made, we presume by appellant from the books of Chisos Mining Company, that purports to show a balance of $2,105.17 owing on January 1, 1933. This conflicts with the ledger sheets introduced in evidence by the appellant. If the estate is to be charged with the $2,000 note, common fairness demands that the account should be credited with same. So credited, it would show a payment for the merchandise sold and would be to the extent of the balance for the merchandise thereafter to be delivered by the payee to Billalba. Further, the best evidence, the books themselves, was not introduced. That such were the charges and counter charges on these books we have only the testimony of appellant. Appellant at all relevant times was the manager of the Chisos Mining Company and the books were under his control, kept, he said, under his direction.

We hold that the evidence is totally insufficient to show a definite, legal obligation on the part of the estate to the Chisos Mining Company. Appellant has no just cause of complaint for the allowance of only $694.37 as to the claimed credit of $2,258.16.

 We take it that before an administrator on final account would be entitled to credit for payment of a claim against the estate he represents he must show that he duly paid same, paid same at a time when it was a valid claim, unbarred by limitation. There is direct and positive evidence sustaining the payment to the extent allowed by the judgment assailed. The manner of the handling of the funds of the estate in connection with the Chisos Mining Company, it is contended, establishes a payment to that concern prior

to the bar of the statutes of limitation. In the second account filed there is no showing that anything other than the amount allowed by the court had been paid. In his deposition appellant testified that he held a balance on deposit in the Chisos Mining Company that precluded the idea that this claim had been paid. The statement of the account of Billalba introduced in evidence, which was dated March 30, 1939, showed a debit balance of $1,563.74 in favor of the Chisos Mining Company. The idea that this claim had been paid in full was first advanced in the amended final report filed as aforesaid on the 25th day of September, 1939. However, short of the approval of the final account, the account of an administrator is subject to correction.

Appellant, on the issue of payment by him, requested these two special issues, which were refused by the Court:

"Special Issue No. 1. From the facts and circumstances offered in evidence, do you find from a preponderance of the evidence that the credits made by the administrator, R. L. Cartledge, on the Federico Billalba, Sr., account, and the Federico Billalba Estate account, were payments made on the indebtedness due the Chisos Mining Company? Answer yes or no."

"Special Issue No. 2: Do you find from a preponderance of the evidence that it was the intent of the administrator, R. L. Cartledge, to apply the credits made on the Federico Billalba, Sr., account, and on the Federico Billalba Estate Account, as payments on the indebtedness due the Chisos Mining Company? Answer yes or no."

These two issues were properly refused by the court. In the first place, question number one was a pure question of law; secondly, the issue assumes that there was an indebtedness due from Billalba to the Chisos Mining Company; thirdly, it assumes that accounts were kept and credits made as testified to by appellant.

The second special issue is subject to the same objection; that is, that it assumes that there was an indebtedness, and it assumes that the accounts were kept as testified to by appellant. The issue of payment was not submitted by the court. The burden to secure a finding thereon rested upon appellant.

If issue as to payment there was, the real issue was, in our opinion, did the administrator deposit with the Chisos Mining Company funds realized from the administration of the estate of Federico Billalba, and did that concern, with the consent and acquiescence of the administrator, appropriate such funds to its claimed indebtedness against the estate? Further, was such application made contemporaneously with the deposits? These, or something similar thereto, coupled with the finding that the debt claimed against the estate was a just debt would have perhaps entitled the appellant to credit for the full amount of the $2,258.16 requested.

Let us assume for the purpose of this discussion alone that it was established that appellant kept these accounts, or the Chisos Mining Company for him, just as he testified. The kind of business that concern was chartered to conduct does not appear. In fact it may not appear that it was a corporation. This, however, we do not deem important. Appellant testified that he was a salaried employee. It does not appear that he had any interest in the concern as such other than as an employee. If we understand the record, appellant's action, according to his testimony, is clear. After he ceased to deposit the funds of the estate in the State National Bank of Alpine, he opened up an account with the Chisos Mining Company. The statements introduced in evidence which, according to the testimony of appellant, are founded on this account, showed that same were between the Chisos Mining Company and Federico Billalba estate. It opens with a charge of $4.20 dated March 20, 1933, and concludes with a charge of $144 dated March 30, 1937. The first credit thereon is "Cash, $32.65," dated April 20, 1933; the last credit is "Cash, sale cattle, $912.05," March 6, 1939. Appellant pleads as follows:

"Said Administrator further shows that when his account with the State National Bank of Alpine was closed, he deposited all funds received by him from the sale of cattle and other property belonging to the said Estate with The Chisos Mining Company of Terlingua, Texas, * * *; that on December 26, 1934 the Administrator began depositing all the funds belonging to the said Estate with the Chisos Mining Company, and the Administrator as Manager of said corporation gave the Billalba Estate credit for all such amounts deposited."

The first credit on the Billalba Estate account, as kept by appellant on the books of the Chisos Mining Company, we presume,

shows to have been made on April 23, 1933. However, this may not be entirely inconsistent with the allegation. It might have been that prior to December, 1934, some money was deposited in the State National Bank and some with the Chisos Mining Company. However, the account with the State National Bank shows appellant did pay directly to the Chisos Mining Company the sum of $500, and was allowed credit therefor in the restatement. On the Billalba estate account there are numerous credit items noted. These credit items in reality are charges against the administrator. In substance the testimony of appellant was that the estate account was a record of the receipts and expenses of the administrator. We think in reality it was the account of the administrator with the estate. As we understand the claim of appellant, it seems to have been kept on the books of the Chisos Mining Company, but in our opinion, if this was true, it was, nevertheless, the account of the administrator.

Now, turning to Exhibit No. 58. This purports to be the account of Federico Billalba, Sr. This, we understand it, purports to be Federico Billalba's account from January 1, 1926, to January 15, 1936. Credits are shown thereon from May 20, 1933, to January 6, 1936, when the account apparently closes. These credits aggregate about $690. Appellant makes two statements of the account of Federico Billalba, Sr., one dated March 30, 1939, in which is shown a debit in favor of the Chisos Mining Company in the sum of $1,563.79; the statement of August 24, 1937, is the same. The court credited the claim of the Chisos Mining Company with the credits shown on these two statements. The statement of the Billalba estate account dated August 27, 1939, of which there are two in evidence, shows a substantial conformity with the receipts of the administrator and the expenses of administration paid by the administrator as shown by his account. One shows a ledger account balance in favor of the estate against the administrator of $3,654.60. At the close of the statement the balance showing was credited with $1,563.79 in favor of the administrator. When this credit was written does not appear. It appears at the bottom of the account and the date is "8-12." No year is given.

Assuming these accounts were kept in the manner testified to, in our opinion they negative the intention claimed by appellant. If payment there was, it must be inferred from the fact that the administrator placed the funds of the estate in the custody of a claimed creditor of the estate. There is no evidence that its custody was different from that of the State National Bank. It is elementary that the custodian of the funds of a trustee must respect its duty to the trustee and likewise the trust upon which the trustee holds same. Appellant held these funds to pay out only under the direction of the Probate Court. The Chisos Mining Company, when it received these funds, had notice of this trust. At all relevant times it is true that it had the power to apply them to its claim. It is likewise true that it did not have the right, if these funds were in fact deposited to the credit of the administrator, to apply them to its claim. The law did not automatically apply these deposits to its claim. Jackson v. Jones, 74 Tex. 104, 11 S.W. 1061. It is not a record of current and contemporaneous transactions where mutual charges and credits are made. It was an account of the funds of the administrator held in trust by him.

The situation is somewhat complicated by the fact that appellant was the general manager of the Chisos Mining Company. Most certainly when he sold property and collected the proceeds thereof such funds were in his custody as administrator; although at the same time he was the agent of the Chisos Mining Company, and that Company asserted claim against the estate, he was, we take it, the agent of the Company in the custody of its funds. He kept an account of the money coming into his hands as administrator, and as such paid the expenses of the trust. This he had a right to do. To do this it was necessary for him to retain the custody of the funds. His right to do this seems never to have been questioned by the Company.

We are of the opinion that the evidence was insufficient to raise the issue of payment other than allowed by the trial court. Further, that the issues requested by appellant were not in proper form, and there is no finding that he did in fact pay the balance of this claim. Further, that as to this claim appellant did not secure a finding that it was a just claim. The evidence was at least insufficient to establish as a matter of law that it was such. The assignments involving the claimed credit are overruled.

■ The restatement charged appellant with the value of 163 head of goats, for which appellant failed to account, in the sum of $489. No complaint as to this charge is made. Appellant during the course of the administration made sales for the fair market value of the property totalling $3,401.31. None of these sales were authorized by the court. On the items totalling this sum six per cent interest was charged to the administrator on the restatement. The total interest charge was $880.91. Appellant makes no particular objection as to the charging him with interest, but contends that he was charged too much interest; that he was charged with interest on moneys he had paid out for expenses and disbursements for which he was allowed credit in the restatement. Credits were allowed appellant in the restatement of $2,061.20. No complaint is made as to the credits save as to the refusal to allow the claimed credit of $1,563.79 on the claim of the Chisos Mining Company.

During the long continuance of this administration appellant admits the collection of over $5,000. Deducting credits of $2,061.20 allowed the administrator, there was something over $3,000 collected. On a sum approximately equaling the expenses allowed no interest was charged him. His unauthorized sales amounted to conversions. True, he should not be charged interest on moneys that were legitimately expended in the course of the administration. When he took charge he had on hand a balance of $1,196.41 in cash. Many of the sales, in addition to being unauthorized, seem to have been entirely unnecessary. There seems no good reason why the administration was not closed within the three years provided in Art. 3320, R.S. 1925. Appellant fails to demonstrate that the amount of interest allowed was too great.

Appellant was charged with the sum of $3,401.31 for property sold at its fair market value. The items comprising this total are set forth in the judgment. Adding same, the total is $3,319.05. One of the items going to make up the total last named is the sum of $42 for mohair sold to Earl Clark on May 13, 1935. Interest was charged thereon in the sum of $39.25. Appellant in his account charged himself on this item $124.26. In his appeal bond this item is set forth as $124.26. Interest on that amount for the time allowed is almost if not exactly $29.35. · As to this item it is clear that there was a clerical error. The total amount charged is correct. It is the item of $42 that is incorrect. The manifest intention apparent from the record was to charge $124.26. It is unnecessary to correct the mistake. It is apparent from the face of the record, as is likewise what was really intended.

■ Appellant was charged with the sum of $680 for receipts on the sale of certain livestock. On each of these sales the jury found that the market value of such stock was not realized. Under the direction of the court they found the highest market value of the stock from the date of the sale to the date of the trial. This amount was offset by the expenses of caring for the stock between the date of the sale and the date that the highest market value could have been realized. On these sales appellant actually received and charged himself with the sum of $607.05. He was charged with $74.95 additional in the restatement. In considering this item it must be borne in mind that these sales were neither authorized nor confirmed by the court. Appellant substituted his own judgment for that of the court in determining the necessity of these sales and whether in consummating same the best interests of the estate were subserved. In such a case the burden was certainly upon him to show the necessity therefor and that a fair price had been obtained.

■ The theory is advanced by appellant that until a short time before he filed his amended account that he did not know he was permanent administrator. In the very order discharging him as temporary administrator he was ordered to account to the permanent administrator for the moneys he held as temporary administrator. If he had not acted in wilful disregard, or at least reckless indifference, of the duties imposed by his custody of the property, same would have either been on hand at the time he was called to account or disposed of in accordance with law. It is clear he failed to observe the law in the disposition of this property. In such a case there is authority for the principle applied by the court in requiring him to account for the property.

The record herein evidences an able, careful and painstaking trial. It was a difficult matter to arrive at substantial jus-

tice herein. This we believe the trial court did.

■ Appellant failed to file an inventory and appraisement. This is the very basis of the liability of an administrator. By the filing of same the property for which he was liable to account would have been shown and its value. By his own unwarranted dealings with the property the burden was cast upon him to justify his every act.

The judgment is affirmed.