MOTOR & INDUSTRIAL FINANCE CORPORATION, Appellant,

v.

Emery H. HUGHES et ux., Appellees.

No. 10384.

Court of Civil Appeals of Texas.

Austin.

May 9, 1956.

Rehearing Denied June 20, 1956.

Cecil C. Rotsch, Louis Scott Wilkerson, Austin, for appellant.

Cofer & Cofer, Austin, for appellees.

GRAY, Justice.

Appellant sued appellees on and for a declaratory judgment as to the validity of three promissory notes which were executed by appellees and are payable to appellant at Austin, Travis County, Texas. These notes are: (1) dated November 16, 1951, due November 16, 1961, for $99,900 and on which note $900 has been paid; (2) dated March 20, 1952, due March 20, 1962, for $14,400, and (3) dated May 27, 1953 for $9,376.37 and payable as follows: 20 per cent of the total amount one year after date and 20 per cent each year thereafter until paid in full, the last payment being due May 27, 1958. Notes (1) and (2) bear interest at the rate of 2 per cent per annum "payable in any event quarterly as it accrues," past due interest to bear interest at the rate of 4 per cent per annum. Note (3) bears interest at the rate of 4 per cent per annum, payable annually as it accrues and past due interest bears interest at 6 per cent per annum. Each of the notes provide for a contingent attorney's fee of 8 per cent of the principal and interest due and accrued if the note is not fully paid "on maturity" etc. Each note is secured by a first deed of trust lien on lands in Robertson County which lien is referred to in each of the notes. Each deed of trust after describing the notes provides:

"Now, therefore, should the Grantors not breach any of the covenants undertaken by them and make punctual payment of said note when demand is made on them for such payment, this deed shall be null and void and of no effect, but if the Grantors make default in the payment of the said note on demand or fail to perform any of the covenants undertaken by them therein, it shall thereupon or at any time thereafter be the duty of the Trustee or any successor or substitute thereto as hereinafter provided at the request of the Beneficiary to enforce this trust  *  *  *"

No acceleration clause is contained in either of the notes.

Appellees are husband and wife, reside in Travis County and the land described in the deeds of trust is the separate property of appellee Katherine Brady Hughes.

Appellant is a loan company organized under the laws of Texas without banking privileges. Art. 1303b, Vernon's Ann.Civ. St. It principal place of business is in Travis County.

At a nonjury trial judgment was rendered "that as between the parties" notes (1) and (2) supra and the deeds of trust securing their payment are void, of no effect and are unenforceable, that as between the parties appellees are entitled to have said notes cancelled, adjudging note (3) supra to be a valid and binding obligation of appellee Emery H. Hughes and awarding appellant a recovery against him for 40 per cent of the principal of said note, accrued interest and attorney's fees, together with a foreclosure of the deed of trust lien as against both appellees to the extent necessary to satisfy said judgment.

A further recovery on an open account was awarded against Emery H. Hughes but it is not questioned here.

Findings of fact and conclusions of law were requested and were filed.

The trial court found that the consideration for note (3) was:

"(1) Interest on $99,900.00 note dated November 16, 1951
November 16, 1951 to January 10, 1953 ....... $2,299.10
January 11, 1953 to April 14, 1953 .............. 499.16

"(2) Interest on $14,400.00 note dated March 20, 1952
March 20, 1952 to April 14, 1953 .............. 613.91

"(3) Collections made by Emery H. Hughes ......... 3,833.10

"(4) Taxes, interest and penalties on El Paso land ... 1,901.10

"(5) Attorney fee for El Paso Attorney .............. 130.00

"(6) Appraisal fee on El Paso land .................. 100.00

Principal amount of note $9,376.37"

Appellant presents three points. These are to the effect that the trial court erred (a) in denying it any recovery on notes (1) and (2), in declaring said notes and their respective deeds of trust void and of no effect "as between the parties" and that "as between the parties" appellees are entitled to have said notes cancelled; (b) in denying any recovery on at least note (1) as against appellees and in declaring it and its deed of trust void "as between the parties." (This point is alternative to point one), and (c) in failing to give effect to the acceleration provisions of the deeds of trust.

Appellees' reply to the above points is to the effect that the ruling of the trial court was correct because: (a) the evidence supports a finding that notes (1) and (2) were without consideration; (b) as to notes (1) and (2) the evidence supports a finding that no estoppel arose in favor of appellant avoiding the necessity for a valuable consideration to support said notes; (c) appellee, Katherine Brady Hughes was not personally liable on any of the three notes because if they were valid they were the personal obligations of Emery H. Hughes and were not executed for any of the purposes authorized by law for which a married woman may bind herself; (d) the evidence supports a finding that the land described in the deeds of trust was not pledged to secure a debt of the husband and the pledge cannot be sustained by an obligation arising by estoppel after the pledge, and (e) appellant was not entitled to accelerate the payment of the notes because they contained no provision for acceleration and the evidence sustains a finding that no condition existed giving rise to such right outside the terms of the notes.

Appellees present one counterpoint which is to the effect that the trial court erred in rendering judgment for any recovery on note (3) because it "was not based upon a valuable consideration."

We will dispose of the appeal on the points presented by appellant, appellee's points in reply and their counterpoint.

During the fall of 1951, appellee Emery H. Hughes was a stockholder and manager of appellant and employed an attorney, Mr. Darrouzett, to represent it in securing for it an issuer's permit to sell securities. We quote from appellee's introductory statement contained in their brief:

"Prior to September 17th, 1951, Mr. Darrouzet had conferences with Mr. Hilgers in the Secretary of State's office with a view of securing an issuers permit to sell the stock of the plaintiff company. The interest of the plaintiff in two mutual insurance companies, the Zenith County Mutual and the Zenith Insurance Company, was carried on plaintiff's books for about $45,000.00. Mr. Hilgers objected to these assets of the plaintiff.

"To replace the assets represented by the managing contract of the two insurance companies, Mr. Hughes offered to put some land into the plain-

tiff corporation. Mr. Darrouzet explained to the directors that the corporation could not own land, and that a note to the value of the land would be signed secured by the land. Mr. Darrouzet and Mr. Hughes explained to Mr. Hilgers, the Security Officer of the Secretary of State's Office, why the note was going to be used, and Mr. Hilgers said, 'Well, your land value is what we are going to look to.' Appraisal of the land satisfactory to Mr. Hilgers was made.

"At the November Board of Directors meeting the whole plan was explained to the Directors that in order to bring the corporation out of a deficit and in order to qualify the company, Mr. Hughes was using his land, but because the corporation couldn't hold land, the $99,000.00 note was used to get the land into the corporation.

"The directors approved the plan, and discussed the donation of the land. Everybody was optimistic and felt sure the corporation was going to make a lot of money, and it was discussed that when the surplus of the corporation got to a certain point, this land would be returned to Mr. and Mrs. Hughes.

"Mr. Hilgers was told that it was anticipated that the land would be returned if the corporation prospered.

"The transaction was arranged and no money was paid to Mr. Hughes for the note. So far as Mr. Darrouzet knew, nothing passed from the corporation to Mr. or Mrs. Hughes, because the idea was to add something to the corporation in order to get rid of the deficit.

"Mr. Darrouzet also made a full disclosure of the transaction to the Banking Commission.

"When the $99,000.00 note was given by the Hugheses to the plaintiff,

Mr. Darrouzet testified that there was never any evidence of intent that the note would ever be used by the corporation for the purpose of transferring such note to somebody else and securing money by the sale of the note, or that the note should be discounted. In fact the manifest intent was to the contrary.

"On November 14th, 1951, Mr. Hughes wrote a letter in which he informed Mr. Hilgers that he spoke for his wife and himself, and that 'she intends' to give, joined by him, 3500 shares of six per cent debenture preference stock of the plaintiff to the plaintiff, and an outstanding $45,000.00 note was to be cancelled, and Mr. and Mrs. Hughes would sign a new note in the principal sum of $99,000.00 two per cent, ten years, secured by land located in Hearne, Texas.

"In 1948 Mr. and Mrs. Hughes executed a $45,000.00 note to the plaintiff secured by her separate real estate. She received from plaintiff 3,500 shares of debenture preference stock in the company for the note. The note was executed to permit the Zenith County Mutual to do a statewide business, and it was transferred to the Mutual by plaintiff for that purpose, and plaintiff took a managing contract in lieu thereof.

"At the time Mrs. Hughes signed this note and pledged her land, she was advised by her attorney not to execute the note without consideration. As a result plaintiff gave Mrs. Hughes 3,500 shares of debenture preference stock, which she in 1951 returned to the corporation in cancellation of her note.

"When Mr. and Mrs. Hughes decided to execute the $99,000.00 note in 1951, she returned the 3,500 shares of debenture stock and her $45,000.00 note was cancelled.

"Mr. David L. Thomson testified that he was secretary of the plaintiff corporation at the September 1951 meeting of the Board and heard the Directors approve the plan outlined by Mr. Darrouzet for Mr. and Mrs. Hughes to make a donation for the sole purpose of meeting the requirements of the Secretary of State. The plan continued to be discussed between Mr. Hughes and the Directors during the next two months. It was Mr. Thomson's understanding that in the event the corporation prospered the corporation was to return the notes. * * *

"Mr. Andre Gerard, a witness for plaintiff, and former attorney for plaintiff, testified that at the time of the signing of the $14,400.00 note sued on in this suit, in March 1952 when it was signed, he was familiar with the business of the corporation and familiar with the signing of the note and the conditions under which it was signed, and that no property, no money, nor anything else passed from the corporation to Mr. and Mrs. Hughes for said note. The note was given in 1952 to counterbalance a deficit of twelve or thirteen thousand in the corporation at that time.

"Mrs. Hughes testified that she first became owner of the property which is described in the three deeds of trust involved in this suit in 1935, by inheritance from her father, and that it was her separate property.

"Mrs. Hughes attended the directors meeting at the Old Seville in September of 1951. Prior to the meeting she had discussed the matter with her husband, and Mr. Darrouzet explained it to her. She also attended the November meeting and the matters were explained again. It was explained to her that her land was being donated to increase the assets of the corporation.

"It was explained to her at those meetings that the land was being donated and that in donating the land the notes were being used as a mechanism by which the assets would be increased, and that the note was an accommodation note.

"From the very beginning, the way she understood it as explained by Mr. Darrouzet was that if she would sign those notes it was mostly an accommodation and that through the years when the corporation did get on its feet she would receive her property back. This was explained by Mr. Darrouzet at the Directors meeting on November 16th, and all of the Directors approved the transaction on that occasion unanimously.

"It was explained to her that her husband was not receiving anything for the notes and that he got no consideration. This was explained to her in the presence of the Directors. She did not receive anything for the execution of either the $99,000.00 note or the $14,400.00, nor did her husband. It was stated and agreed that her husband would manage the sale of the land and develop it.

"Mr. Hughes testified that he employed Mr. Darrouzet to represent the plaintiff corporation to secure an issuers permit to sell securities for the corporation. Mr. Hughes was manager of the corporation at the time. Mr. Hughes understood from Mr. Darrouzet that the corporation would have to have more assets. Mr. Hughes talked with his wife about using her land. It was the feeling of the Directors that the corporation would make a whole lot of money, and it was clearly understood that Mrs. Hughes' property would be returned to her as the corporation got well underway, and the notes were signed as more or less accommodation notes. The $14,400.-00 note, in addition to the first $99,000.-

00, was given later because the corporation did not get underway as fast as it was thought it would, and the additional note was given to make up an additional deficit. It was secured by additional land belonging to Mrs. Hughes. Neither he nor Mrs. Hughes received anything for the signing of either of these two notes.

"Mr. Hughes was advised by Mr. Darrouzet that the company should secure an issuers permit, though the question was doubtful at that time, and the Supreme Court shortly afterwards held that companies organized as plaintiff was did not have to secure a permit. The plan was for the plaintiff corporation to use the Hughes notes to back the plaintiff corporation until the assets in the corporation could be increased and it could handle and enter into the discount banking business. * * *

"The minutes of the plaintiff corporation of November 16, 1951 show that the directors of the corporation agreed to accept the 3,500 shares of preferred stock from Mrs. Hughes and cancel the old Hughes notes for $45,000.00, and to accept the new Hughes note for $99,900.00.

"The resolution approving the transaction passed by the Board of Directors expressly provides:

" 'Where as it is the desire and intention of Mrs. Katherine Brady Hughes and Mr. Emery H. Hughes to donate assets to the Motor and Industrial Finance Corporation,' etc.

"It was also pointed out at the meeting 'that in spite of the fact that the two Insurance Corporations do not longer appear on the books of MIFC, the MIFC still owns the net profits of these corporations.'

"Mr. Hughes testified that the first note given by him and his wife for $45,000.00 was transferred to the Zenith Mutual by the plaintiff (Motor). Zenith did not pay anything to Motor, but the note to Zenith was transferred to it to enable it to operate statewide. The Motor had a managing contract from Zenith, and the earnings of the Zenith went to Motor.

"The Hugheses got stock for the $45,000.00, because the present attorney for the Hugheses advised Mrs. Hughes not to pledge her land for an accommodation note. As a result of this advice, the stock was issued to her, which stock was returned by her when the $45,000.00 note was cancelled."

Note (3) supra came into existence at least in part by reason of the following facts: Appellee Emery H. Hughes for a nominal consideration received a deed to land in El Paso. He conveyed this land to one Threadgill and received his note for $25,000 which was secured by a lien on the land. Hughes transferred the Threadgill note to appellant for $10,000. Later it was discovered that there were delinquent taxes on the El Paso land, the land was appraised and its value was found to be less than $10,000. Finally note (3) was given in settlement of claims of appellant against Emery H. Hughes.

Appellees say that the three notes supra were without consideration and must be treated as accommodation paper.

In Robertson v. City Nat. Bank, 120 Tex. 226, 36 S.W.2d 481, 482, the court considered a suit on a note and to foreclose a deed of trust lien. The note was given by appellants who were stockholders in the Guaranty State Bank of Sunset, Texas to cover assessments against non-notified stockholders of that bank. The note was given because it was feared that if the stockholders were notified of the assessments they would withdraw their deposits and the immediate dissolution of the bank would follow.

" '* * * defendants Robertson and Bryson, being thus influenced, executed said original note with the distinct understanding and agreement that they were not to be held liable thereon and that the same should be paid out of the proceeds of the charged off paper belonging to the Sunset Bank; that defendants executed said note purely as an accommodation.' "

The court quoted section 29 of Art. 5933, Vernon's Ann.Civ.St., defining an accommodation maker and said:

"In order that one may avail himself of the defense of an accommodation maker, under the above provisions, he must not be the recipient of any consideration deemed valuable in law. His act in executing the paper must be void of present or anticipated personal profit, gain, or advantage. Commonwealth National Bank v. Goldstein (Tex.Civ.App.) 261 S.W. 538; Exum v. Mayfield (Tex.Civ.App.) 286 S.W. 481; Waller v. Gorman Mercantile Company (Tex.Civ.App.) 141 S.W. 833; Brinker v. First National Bank (Tex.Civ.App.) 16 S.W.(2d) 965; Magill v. McCamley (Tex.Civ.App.) 182 S.W. 22; Skagit State Bank v. Moody, 86 Wash. 286, 150 P. 425, L.R.A.1916A, 1215.

"The record in this case contains the frank admission of appellants that they executed the note in question for the purpose of obtaining the proceeds thereof for the use of the Guaranty State Bank in order to prevent its closing and consequent loss of the stock owned by them.

"It has been held that it is no accommodation paper where stockholders of a corporation, for the protection of their interest therein, execute a note in order to obtain funds essential to its continued operation. 8 C.J. § 43, p. 256; First National Bank v. Bickel, 143 Ky. 754, 137 S.W. 790; McDonald v. Luckenbach [3 Cir.], 170 F. 434, 95 C.C.A. 604".

In Goodier v. Burnett, Tex.Civ.App., 246 S.W. 402, 403, no writ history, the court considered a note given by a stockholder in a corporation for the purpose of relieving its financial difficulties and to enable it to continue in business. A receiver for the corporation was appointed and its assets including the note were transferred to Goodier. The court said:

"'* * * the interest the stockholders had in the continuance of the corporation as a sound financial and paying business institution constituted sufficient consideration to support the notes given, and the notes became, upon delivery, debts due to the corporation, for which it could maintain an action. Lillard v. Decatur Cotton Seed Oil Co., 14 Tex.Civ.App. 67, 36 S.W. 792; [Union] Bank [of Brooklyn] v. Sullivan, 214 N.Y. 332, 108 N.E. 558; Dykman v. Keeney, 10 App.Div. 610, 42 N.Y.S. 488-493; Id., 160 N.Y. 677, 54 N.E. 1090; Brodrick v. Brown (C.C.) 69 F. 497; [Utah Nat.] Bank [of Salt Lake City] v. Nelson, 38 Utah 169, 111 P. 907; 1 Cook on Corporations, 76, p. 323 et seq."

At the time notes (1) and (2) were given Emery H. Hughes was a stockholder and manager of appellant and appellees' statement supra brings the notes within the rule of law above stated. Also see: Commercial Investment Co. of Uvalde v. Graves, Tex.Civ.App., 132 S.W.2d 439, er. ref.; 10 C.J.S., Bills and Notes, § 151h, pp. 624–625.

■ Under the authorities supra notes (1) and (2) are supported by consideration and are valid and binding obligations of Emery H. Hughes. Appellees argue that in any event the consideration for the notes was executory. This would be immaterial. Cartledge v. Billalba, Tex.Civ. App., 154 S.W.2d 219, 224.

■ Our statement as to note (3) is sufficient to show consideration for that note.

It appears that the notes and the deeds of trust securing their payment were executed at the same time for which reason they are to be construed together as constituting one contract. San Antonio Real Estate, Building & Loan Ass'n v. Stewart, 94 Tex. 441, 61 S.W. 386, 86 Am.St.Rep. 864. If the provision as to acceleration in the note and in the deed of trust are in conflict then the provision in the note prevails. Braniff Inv. Co. v. Robertson, 124 Tex. 524, 81 S.W.2d 45, 51. However if there is an acceleration clause in the deed of trust and none in the note then that in the deed of trust prevails. Mazzola v. Lucia, Tex.Civ. App., 109 S.W.2d 273, er. ref.; 10 C.J.S., Bills and Notes, § 251b, p. 748.

The purported acceleration clause in the deeds of trust is not the usual clause found in such instruments. It provides for the enforcement of the trust "at the request of the beneficiary."

In any event the exercise of the power is a harsh remedy and deserves close scrutiny. Parker v. Mazur, Tex.Civ.App., 13 S.W.2d 174, er. dism.

In their briefs the parties disagree as to the right of appellant to mature the notes under the provisions of the acceleration clause, but they do not disagree that there are now payments of interest due and unpaid and also a percentage of the principal on note (3),—provided the notes are valid obligations. For this reason we will confine our consideration to appellant's right to mature the principal of the notes.

As noted supra the notes are payable at Austin, Travis County, Texas, but no place at which payment may be made is given.

We think that the clause "at the request of the beneficiary" must be given the same meaning as is given to the clause "at the option of the holder." The clause under consideration is not self executing but in any event the enforcement of the trust depends on the will or the desire of the beneficiary to make a request for its enforcement. A request is not compelled

and it is therefore optional with the beneficiary. Parker v. Mazur supra.

In Faulk v. Futch, 147 Tex. 253, 214 S.W.2d 614, 616, 5 A.L.R.2d 963, the court said:

"* * * the rule is well established that, 'Where the acceleration clause in a promissory note leaves it optional with the holder whether he shall declare the whole amount due upon failure to pay any installment of principal or interest, such holder cannot without presentment for payment, exercise his option to declare the whole amount due, if no specific place of payment is expressed in the note, until it has been presented to the payor at the latter's known place of business.' Griffin v. Reilly, Tex.Civ.App., 275 S.W. 242, 248; Bardsley v. Washington Mill Co., 54 Wash. 553, 103 P. 822, 132 Am.St. Rep. 1133; Beckham v. Scott, Tex.Civ. App., 142 S.W. 80; Parker v. Mazur, Tex.Civ.App., 13 S.W.2d 174; Ladd v. Anderson, Tex.Civ.App., 89 S.W.2d 1041; Curtis v. Speck, Tex.Civ.App., 130 S.W.2d 348."

Appellant pleaded a demand for and the refusal of payment of principal, interest and attorney's fees but we are not directed to and have not found proof of these allegations. In this state of the record appellant cannot mature the three notes under the acceleration clause in the deeds of trust and we need not and do not further interpret such clause.

Appellant alleged that appellees were husband and wife and appellees urged a plea of coverture as to appellee Katherine Brady Hughes.

As to the evidence the statements supra will suffice. However appellant alleged that notes (1) and (2) were given for the benefit of the separate estate of appellee Katherine Brady Hughes. It here argues that note (1) was an obligation for the benefit of her separate estate and that she is personally liable thereon. It says that

the cancellation of the $45,000 note and the deed of trust on her separate property resulted in a benefit to her separate estate because the deed of trust lien exposed her to the hazard of losing her said estate and that this was consideration for note (1). If the facts supported this argument the holding in Farm & Home Savings & Loan Ass'n of Missouri v. Abernathy, 129 Tex. 379, 102 S.W.2d 410, 104 S.W.2d 1111, would apply. However the facts do not support the argument but show that the $45,000 note and the deed of trust securing its payment was cancelled upon the return to appellant of 3500 shares of stock "for the note."

Appellant's argument is limited to note (1).

We conclude that the three notes are valid and binding as to appellee Emery H. Hughes; that Mrs. Hughes is not personally liable thereon, but that the deeds of trust are valid and binding as to each of them. Red River Nat. Bank v. Ferguson, 109 Tex. 287, 206 S.W. 923; Giles v. First Nat. Bank of Brownfield, Tex.Civ.App., 257 S.W.2d 945.

The judgment of the trial court adjudging notes (1) and (2) and the deeds of trust securing their payment to be void and of no effect and cancelling the same as between the parties and denying appellant any recovery thereon is reversed and judgment is here rendered that said notes are valid and binding obligations of Emery H. Hughes, that appellee Katherine Brady Hughes is not personally liable thereon and that the deeds of trust are valid and binding as to both appellees, and further that appellant have judgment for the unpaid interest on said notes together with attorney's fees and foreclosure of the deed of trust liens securing the payment thereof.

The judgment of the trial court as to note (3) is affirmed.

Reversed in part and in part affirmed.

On Appellant's Motion for Rehearing

In its motion for rehearing appellant complains that we erred in our original opinion in holding that it could not mature the notes sued on under the acceleration clause in the deeds of trust because of the absence of proof of "presentment."

Our view as expressed is fully supported by the holding of our Supreme Court in Faulk v. Futch cited in our original opinion. Also see Annotations in 5 A.L.R.2d at page 977, Sec. 6.

We did not hold that presentment and demand for payment was a necessary precedent to mature the installments due on the notes. We did note that appellant's pleading alleged "a demand for and the refusal of payment of principal, interest and attorney's fees" and also noted the absence of proof of these allegations. The acceleration clause provides: (1) that if the grantors do not breach any of the covenants undertaken by them and make punctual payment of the note "when demand is made on them for such payment" the deed of trust shall become null and void, and (2) that if the grantors make default in the payment of "said note on demand" or if they fail to perform any of the covenants undertaken by them it shall thereafter be the duty of the trustee "at the request of the Beneficiary to enforce this trust." These conditions were a part of the contractual provisions of the deeds of trust and the pleading is limited to such contractual provisions.

Appellant refers to the pleading supra, cites Rule 54, Texas Rules of Civil Procedure, and says that the absence of proof is immaterial. In McKay v. American Central Ins. Co., Tex.Civ.App., 245 S.W.2d 529, 531, no writ history, the Court considered the question of whether the insurance company had waived the provision of the policies requiring the filing of proofs of loss and said:

"Appellants urge that appellees by filing general denials to their peti-

tions (before consolidation) waived the filing of proofs of loss. Each petition contained the allegation made in accordance with the procedure permitted by Rule 54, R.C.P., that, 'Plaintiffs have done and performed all of the conditions and provisions required of them under the terms of the policy.' The general denial traversed these allegations and did not operate as a waiver of the filing of proofs of loss but constituted a denial that proofs of loss had been filed. Equitable Life Insurance Society of United States v. Kellemen, 224 Ind. 526, 69 N.E.2d 244, and authorities therein cited.

"We hold that there is no evidence of a waiver of the contractual provisions requiring the filing of proofs of loss."

Rule 93(m), Texas Rules of Civil Procedure, was not discussed in the opinion.

In 1 C.J.S., Actions, § 27a, at p. 1068, it is said:

"A demand as a condition precedent to the maintenance of an action is necessary when expressly required by statute, or by the terms of an agreement, or implied from the nature of the undertaking or the circumstances of the particular case."

Rule 54, supra, was in effect when Faulk v. Futch, supra, was decided. That opinion recites facts which show that presentment and demand for payment were made or in any event were excused but it does not discuss Rule 54. Perhaps a discussion of the rule was deemed unnecessary because of Art. 5937, Sec. 73, par. 3, cited in the opinion.

■ The general rule with reference to the necessity for making demand before suit is stated to be that "When an obligation to pay is complete, a cause of action at once arises, and no formal demand is necessary." Ballew v. Casey, 60 Tex. 573; Green v. Scales, Tex.Civ.App., 219 S.W. 274. No writ history; American General

Ins. Co. v. Nance, Tex.Civ.App., 60 S.W.2d 280, Er. Ref.; Texas Water Supply Corp. v. Reconstruction Finance Corp., 5 Cir., 204 F.2d 190. This rule however has no application here because note (1) is due November 16, 1961, note (2) is due March 20, 1962, and the last installment of note (3) is due May 27, 1958. It is appellant's contention that it has a right to mature the notes because of the acceleration clause which we have held to be optional. Therefore the obligation to pay the full amount of the notes was in no event completed until the option was exercised by an election to mature the notes.

■ We have concluded that we were in error in holding that appellee Katherine Brady Hughes was not personally liable on notes (1) and (2). The evidence shows that she was a stockholder in appellant corporation at the time the notes were executed; that she attended the directors' meetings when the giving of the notes was discussed; that she understood the purpose of giving the notes and that she signed the notes for the purposes stated in our original opinion.

It was agreed that the stock owned by Katherine Brady Hughes in appellant corporation was her separate property. What we have said constituted consideration for notes (1) and (2) necessarily applies to her because her separate property was to be benefited. She was authorized to own stock in the corporation, 23 Tex.Jur., Sec. 65, p. 88, she personally made the contract and because the notes were given for the benefit of her separate property she is liable thereon. Levin v. Jeffers, 122 Tex. 83, 52 S.W.2d 81; Yates v. Home Building & Loan Co., Tex.Civ.App., 103 S.W.2d 1081. No writ history; 23 Tex.Jur., p. 202, Sec. 171.

Our former judgment adjudging that appellee Katherine Brady Hughes is not personally liable on notes (1) and (2) is set aside and judgment is here rendered that she is personally liable thereon.

To the extent herein stated appellant's motion for rehearing is granted but in all other respects the same is overruled.

Motion granted in part and in part overruled.